**Robbins Geller Rudman & Dowd LLP**

| | | | | |
|---|---|---|---|---|
| Atlanta | Chicago | Melville | Philadelphia | San Francisco |
| Boca Raton | Manhattan | Nashville | San Diego | Washington, DC |

Trig R. Smith
trigs@rgrdlaw.com

September 21, 2015

VIA ECF & FAX

Honorable Naomi Reice Buchwald
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 21A
New York, New York  10007-1312

      Re:   *In re Intercept Pharmaceuticals, Inc. Sec. Litig.*,
            No. 1:14-cv-01123-NRB

Dear Judge Buchwald:

      On behalf of plaintiffs, we write in response to the September 16, 2015 Local Civil Rule 37.2 letter by counsel for third-party *The Wall Street Journal* ("*Journal*") reporter Peter Loftus. Dkt. No. 75. Loftus has invoked the "reporter's privilege" and requests that the Court schedule a pre-motion conference or establish a briefing schedule for his proposed motion to quash a subpoena for his deposition testimony. *Id*. at 1.

      Plaintiffs are only seeking to depose Loftus for the purpose of establishing that four statements attributed to defendant Mark Pruzanski in articles written by Loftus were in fact made by Pruzanski. The statements, which the articles stated were made in an interview Pruzanski gave to Mr. Loftus, are alleged to have been false and misleading and are directly relevant to plaintiffs' claims of securities fraud. Exs. 1-3.[1] Moreover, Pruzanski has refused to admit and, with respect to one of the statements, outright denied that he made the statements attributed to him. Ex. 6. In these circumstances, the qualified reporter's privilege does not bar Loftus from testifying and his motion to quash is properly denied.

      **Procedural Background:** This case concerns defendants' false and misleading statements regarding the drug OCA and the FLINT trial testing OCA for the treatment of NASH. *See*, *e.g.*, Dkt. No. 38 at 1-7. Among the alleged false and misleading statements are ones made by defendant Pruzanski to Loftus and published in *Journal* articles. On January 10, 2014, the *Journal* published an article by Loftus entitled, "A $4 Billion Surprise for 45-Person Biotech." Ex. 1. Based on a January 9, 2014 interview with Pruzanski, the article and follow-on *Journal* publications reported, "***Dr. Pruzanski said the company doesn't yet have details about any adverse events patients might have experienced during the trial***" and that he "***said Intercept was making public all the information it had received from the NIH***." Exs. 1-2. Later, in a May 21, 2014 article apparently based on a January 10, 2014 interview with defendant Pruzanski, the *Journal* reported that Pruzanski stated that "***the only thing [the NIH] and [Intercept] agreed we could disclose was that the study had been stopped early because the study had met its primary endpoints***" and "***Intercept had decided in conjunction with the NIH not to disclose the cholesterol abnormalities***." Ex. 3.

      In their Answer to the Consolidated Complaint, defendants denied that the descriptions of the quoted statements from the *Journal* were "complete or accurate." *See* Dkt. No. 45, ¶¶43, 57. In

---

[1]    All references to exhibits are to the exhibits attached to Dkt. No. 75.

**ROBBINS GELLER**
**Rudman & Dowd** LLP

Honorable Naomi Reice Buchwald
September 21, 2015
Page 2

response to follow-on requests for admission, Pruzanski acknowledged (but did not admit) that he made three of the statements that appeared in the *Journal* in "substance," but stated that he "can neither admit nor deny that he used the exact language" identified in the *Journal* articles. *See* Ex. 6 (responses to request nos. 1-2, 5-8). Pruzanski also denied that he made one of the statements attributed to him, the assertion "Intercept was making public all the information it had received from the NIH." *Id.* (responses to request nos. 3-4).

Given the undisputed relevance of the statements attributed to Pruzanski in the *Journal* articles, defendants' Answer and discovery responses and the non-confidential nature of the testimony sought, plaintiffs notified counsel for the *Journal* of the need for Loftus' testimony. While plaintiffs confirmed that the scope of their deposition questioning would be extremely narrow – concerning only the accuracy of the Pruzanski statements in the *Journal* articles and nothing of a confidential nature – Loftus has taken the position that any testimony would be protected by the reporter's privilege. *See* Dkt. No. 75.

**Legal Standard:** In accordance with Fed. R. Civ. P. 26 and 45, the burden of persuasion in a motion to quash a subpoena and for a protective order is borne by the movant. *John Wiley & Sons, Inc. v. Doe*, 284 F.R.D. 185, 189 (S.D.N.Y. 2012). In the Second Circuit, reporters are protected by a qualified privilege against compelled disclosure of confidential sources and information prepared or obtained in connection with a news story. *See Gonzales v. NBC*, 194 F.3d 29, 32 (2d Cir. 1999). In this Circuit, the qualified reporter's privilege may apply to non-confidential, as well as to confidential, information. *Id.* at 33, 36. Where, as here, all that is sought is non-confidential information, a lower standard to overcoming the privilege applies: "Where a civil litigant seeks nonconfidential materials from a nonparty press entity, the litigant is entitled to the requested discovery notwithstanding a valid assertion of the journalists' privilege if he can show that the materials at issue are of likely relevance to a significant issue in the case, and are not reasonably obtainable from other available sources." *Id.* at 36; *see also United States v. Treacy*, 603 F. Supp. 2d 670, 672 (S.D.N.Y. 2009). Loftus argues that the evidence sought is obtainable from other sources and that the statements at issue are not relevant to a significant issue in the case. Dkt. No. 75. Neither argument is accurate or persuasive.

**The Information Sought Is Not Obtainable from Other Sources:** As described above, in their Answer defendants denied that the descriptions of the quoted statements from the *Journal* were "complete or accurate." Subsequently, in response to plaintiffs' discovery requests, Pruzanski outright denied making one of the statements attributed to him and, for the other three statements at issue, asserted that he could "neither admit nor deny that he used the exact language" in the *Journal* articles. Because the accuracy of the *Journal* statements is contested by defendants, the only other source available to address the statements is Loftus, who interviewed Pruzanski and wrote or contributed to the relevant articles. The testimony plaintiffs seek is precisely the type of discovery that courts in this Circuit and others have held is permissible and not barred by the reporter's privilege. *See Treacy*, 603 F. Supp. 2d at 672-73 (refusing to quash a subpoena where limited testimony from the *Journal* reporter was sought to confirm that the defendant made three statements forming part of a published article); *In re Waldholz*, No. 87 CIV. 4296 KMW, 1996 WL 389261, at *1 (S.D.N.Y. July 11, 1996) (reporter compelled to testify where defendant denied the accuracy of an alleged false and misleading statement attributed to him in the *Journal*); *United States v. Foote*, No. 00-CR-20091-01-KHV, 2002 WL

1822407, at *1 (D. Kan. Aug. 8, 2002) (refusing to quash subpoena seeking testimony that "statements and/or quotes attributed to Defendant that appeared in the newspaper articles" were, in fact, statements made by the defendant).[2]

   **The Information Sought Is Highly Relevant:** The testimony plaintiffs are seeking from Loftus could hardly be more relevant. The deposition testimony is necessary to establish that Pruzanski made statements that are a basis of plaintiffs' allegations of securities fraud. Loftus does not actually challenge the relevance of the testimony sought, but argues that the discovery would be "duplicative" because the Pruzanski statements published in the *Journal* are "similar" to those defendants made elsewhere. Dkt. No. 75 at 2-3. The statements in the *Journal*, however, were not made in defendants' press release or conference call, rather, they were made in a separate interview provided by Pruzanski and form an independent basis for plaintiffs' claims (as well as evidence of scienter). The fact that the statements are "similar" clearly does not render them irrelevant. *See Waldholz*, 1996 WL 389261, at *2-*4 (rejecting argument that the existence of similar statements rendered *Journal* reporter's testimony unnecessary or irrelevant). Indeed, the statements published in the *Journal* are unique from those defendants made in their conference call, including the statement "Intercept was making public all the information it had received from the NIH," which Pruzanski has denied that he made. Ex. 2. Accordingly, the testimony sought is highly relevant.[3]

   For the foregoing reasons, Loftus' proposed motion to quash and for a protective order is futile and he should be compelled to comply with the deposition subpoena.

            Very truly yours,

            TRIG R. SMITH

---

[2]  Loftus' wholesale reliance on Judge Sweet's opinions in the *New England Teamsters & Trucking Indus. Pension Fund v. N.Y. Times Co.* ("*N.E. Teamsters*") matter is misplaced. There, the plaintiffs sought the production of documents (not just testimony) that the *Times* had acquired from confidential sources. *N.E. Teamsters*, No. 14 Misc. 59, 2014 WL 1567297, at *1 (S.D.N.Y. Apr. 17, 2014); *New England Teamsters & Trucking Indus. Pension Fund v. N.Y. Times Co.* ("*N.E. Teamsters II*"), No. 14 Misc. 59, 2015 WL 2151824 (S.D.N.Y. May 7, 2015). The motion to compel was denied, without prejudice, on the basis that the plaintiffs were still in the process of trying to get the same documents from the defendants in the case and there was no showing that the defendants would not be able to produce the documents. *N.E. Teamsters*, 2014 WL 1567297, at *4-*6; *N.E. Teamsters II*, 2015 WL 2151824, at *2-*3. Judge Sweet did not hold that any particular deposition was necessary before discovery could be sought from a reporter and, in fact, noted that "interrogatory responses from [an] HCA witness[]" could be sufficient to warrant discovery. *Id.* at *5. Here, plaintiffs have the discovery responses, Pruzanski's responses to the Requests for Admission, that demonstrate that the information sought is not available from other sources. Ex. 6. In any event, if Loftus will agree to provide testimony, plaintiffs have no objection to scheduling his deposition at the end of the discovery period.

[3]  Again Loftus' reliance on *N.E. Teamsters* is misplaced. There, Judge Sweet found the discovery was duplicative because the plaintiffs still had the opportunity to get the exact same documents from defendants that they sought from the *Times*. *N.E. Teamsters*, 2014 WL 1567297, at *5; *N.E. Teamsters II*, 2015 WL 2151824, at *2.

Robbins Geller
Rudman & Dowd LLP

Honorable Naomi Reice Buchwald
September 21, 2015
Page 4


cc:     All Counsel via ECF
        Katherine M. Bolger, Esq. (via email)

1075824_1