UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re INTERCEPT PHARMACEUTICALS, INC. SECURITIES LITIGATION | : : : : : : : : : : : | Civil Action No. 1:14-cv-01123-NRB<br><br>CLASS ACTION<br><br>PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL |
| This Document Relates To:<br><br>    ALL ACTIONS. | | |

1081723_1

**TABLE OF CONTENTS**

    **Page**

I.    Plaintiffs' Evidence that the Proposed Class Satisfies the Requirements of Rules 23(a) and 23(b)(3) Is Undisputed ..................................................................................... 1

II.   The *Cammer* and *Krogman* Factors Establish Market Efficiency ........................................ 3

III.  Feinstein's Event Study Evidences Market Efficiency ........................................................... 4

    A.    Feinstein Appropriately Used One- and Two-Day Event Windows to Determine that Intercept Stock Traded in an Efficient Market ................................ 5

    B.    The Stock Price Reaction to Disclosures About OCA and the FLINT Trial Demonstrate Market Efficiency ................................................................. 8

    C.    There Is No Evidence to Support Defendants' Claim that Intercept's Stock Price Moved in Response to "Stale News" ............................................................. 9

IV.  Conclusion ................................................................................................................. 10

## TABLE OF AUTHORITIES

Page

**CASES**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  _U.S._, 133 S. Ct. 1184 (2013) ...................................................................................2

*Brown v. China Integrated Energy, Inc.*,
  2014 U.S. Dist. LEXIS 11764
  (C.D. Cal. Aug. 4, 2014) ............................................................................................9

*Cammer v. Bloom*,
  711 F. Supp. 1264 (D.N.J. 1989) ..................................................................2, 3, 4, 10

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
  2015 WL 5000849 (S.D.N.Y. Aug. 20, 2015) ....................................................3, 4, 5, 6

*Cross v. 21st Century Holding Co.*,
  2002 WL 31158901 (S.D.N.Y. Sept. 27, 2002) ..........................................................8

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  2015 WL 4522863 (N.D. Tex. July 25, 2015) ........................................................5, 6

*Fogarazzo v. Lehman Bros.*,
  263 F.R.D. 90 (S.D.N.Y. 2009) ..................................................................................6

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  _U.S._, 134 S. Ct. 2398 (2014) ..............................................................................1, 6

*In re Comput. Scis. Corp. Sec. Litig.*,
  288 F.R.D. 112 (E.D. Va. 2012) ................................................................................3

*In re Diamond Foods, Inc.*,
  295 F.R.D. 240 (N.D. Cal. 2013) ...............................................................................4

*In re DVI, Inc. Sec. Litig.*,
  639 F.3d 623 (3d Cir. 2011) ......................................................................................5

*In re Fed. Home Mortg. Corp. (Freddie Mac) Sec.*,
  281 F.R.D. 174 (S.D.N.Y. 2012) ...............................................................................3

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
  2015 WL 5613150 (S.D.N.Y. Sept. 24, 2015) ............................................................4

*In re IPO Sec. Litig.*,
  260 F.R.D. 81 (S.D.N.Y. 2009) ..................................................................................6

**Page**

*In re JPMorgan Chase & Co. Sec. Litig.*,
   2015 U.S. Dist. LEXIS 132181
   (S.D.N.Y. Sept. 29, 2015) ........................................................................................... 3

*In re Pfizer Sec. Litig.*,
   282 F.R.D. 38 (S.D.N.Y. 2012) .................................................................................. 3

*In re PolyMedica Corp. Sec. Litig.*,
   453 F. Supp. 2d 260 (D. Mass. 2006) ......................................................................... 9

*In re Vivendi Universal, S.A. Sec. Litig.*,
   634 F. Supp. 2d 352 (S.D.N.Y. 2009) ........................................................................ 5

*In re Xcelera.com Sec. Litig.*,
   430 F.3d 503 (1st Cir. 2005) ...................................................................................... 5

*Krogman v. Sterritt*,
   202 F.R.D. 467 (N.D. Tex. 2001) ....................................................................... 2, 3, 4

*Smilovits v. First Solar, Inc.*,
   295 F.R.D. 423 (D. Ariz. 2013) .................................................................................. 4

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
   Rule 23(a) ........................................................................................................ 1, 3, 10
   Rule 23(b)(3) ................................................................................................... 1, 3, 10

Federal Rules of Evidence
   Rule 702 ................................................................................................................ 2, 3

**SECONDARY AUTHORITIES**

*Lessons from Financial Economics: Materiality, Reliance,
   and Extending the Reach of Basic v. Levinson*,
   77 Va. L. Rev. 1017, 1031 (1991). ......................................................................... 5, 6

1081723_1

Plaintiffs George Burton and Scot Atwood respectfully submit this reply memorandum in support of their motion to certify this action as a class action, appoint Plaintiffs as Class Representatives and appoint Robbins Geller as Class Counsel (Dkt. No. 64).[1]

## I. Plaintiffs' Evidence that the Proposed Class Satisfies the Requirements of Rules 23(a) and 23(b)(3) Is Undisputed

Defendants have conceded, through their silence and limited argument, that this case is appropriately certified as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).  Defendants do not dispute that Plaintiffs have met each of the requirements of Rule 23(a): (1) the proposed class of Intercept investors is sufficiently numerous; (2) there are questions of law and fact common to the class; (3) the claims of Mr. Burton and Mr. Atwood are typical of the claims of the class; and (4) Plaintiffs, with their counsel Robbins Geller, will fairly and adequately protect the interests of the class.  With the exception of a single issue – the ability of the Class to rely on the fraud-on-the-market presumption of reliance – Defendants also do not dispute that Plaintiffs have met the requirements of Rule 23(b)(3) and demonstrated that (1) "common" issues of law and fact "predominate over any questions affecting only individual members," and (2) a class action is "superior" to other methods of adjudication.  Fed. R. Civ. P. 23(b)(3).

Even as to the lone argument they make, attacking the application of the fraud-on-the-market presumption of reliance, Defendants' silence is telling.  The presumption is properly applied where Plaintiffs show, by a preponderance of the evidence, that "(1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed."  *Halliburton Co. v. Erica P. John Fund, Inc.*, _U.S._, 134 S. Ct. 2398, 2413 (2014).

---

[1]   Unless otherwise stated, all terms defined in the Memorandum of Law in Support of Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel (Dkt. No. 64) are used herein, all citations are omitted and all emphasis is added.

- 1 -

Materiality is assumed for class certification purposes (*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, _U.S._, 133 S. Ct. 1184, 1196-97 (2013)) and Defendants do not dispute that their alleged false statements were publicly known and that Plaintiffs purchased Intercept stock during the Class Period and before the truth about Defendants' fraudulent conduct was revealed.  Left to argue that Intercept common stock did not trade in an efficient market, despite trading on the NASDAQ, Defendants are again forced to make one concession after another.  Defendants do not challenge the evidence Plaintiffs and their expert, Professor Steven Feinstein, put forward, which demonstrates that Intercept's stock met the first four of five *Cammer v. Bloom*, 711 F. Supp. 1264, 1276 (D.N.J. 1989) efficient market factors **and** all three of the factors the court in *Krogman v. Sterritt*, 202 F.R.D. 467, 478 (N.D. Tex. 2001) held are evidence of market efficiency.  On this evidence alone, courts routinely find that an efficient market has been proven and the presumption of reliance applies.

As to the final *Cammer* factor, evidence of price reaction to new, company-specific information, Defendants once again cannot dispute that Intercept's stock price reacted immediately to each of the disclosures about the drug OCA and the FLINT trial that are central to this case.  So, Defendants and their expert are left to argue that even though Intercept's stock price indisputably reacted to the disclosure of new information, it took "too long" to fully incorporate the new information and must have been responding to "stale news."  These arguments have no factual footing and, like the opinions of Defendants' expert, have been repeatedly rejected by courts.[2]  The

---

[2]  Defendants' expert, Professor Paul Gompers, has submitted testimony at class certification in at least nine cases over the last four years, every time claiming that the plaintiffs had not demonstrated market efficiency. As set forth in Exhibit A attached hereto, in all but one of those cases Gompers' conclusions were not accepted, the market was deemed efficient and the class was certified. While much of Gompers' testimony here lacks a credible methodological basis and does not meet the requirements of Fed. R. Evid. 702, given that this matter is being decided by the Court, Plaintiffs have opted not to move to exclude that testimony. This decision should not be read as an acknowledgement that Gompers' testimony complies with the

evidence overwhelmingly demonstrates that Intercept stock traded in an efficient market and the fraud-on-the-market presumption of reliance applies. Accordingly, the class of Intercept investors harmed by Defendants' fraudulent conduct meets the requirements of Rules 23(a) and 23(b)(3) and should be certified.

**II.       The *Cammer* and *Krogman* Factors Establish Market Efficiency**

Courts in this Circuit look to the factors set forth in *Cammer* and *Krogman* to determine whether the market for a stock is efficient. *See, e.g.*, *In re JPMorgan Chase & Co. Sec. Litig.*, 2015 U.S. Dist. LEXIS 132181, at *17-*20 (S.D.N.Y. Sept. 29, 2015); *In re Pfizer Sec. Litig.*, 282 F.R.D. 38, 53 n.9 (S.D.N.Y. 2012). With no response to the fact that Plaintiffs have demonstrated that each of the first four *Cammer* factors and all three of the *Krogman* factors are met here, Defendants instead claim that these are only "secondary indicia of efficiency" and "'do not establish market efficiency.'" Dkt. No. 72 ("Opp.") at 9 n.10. Defendants cite no authority for that bold proposition and their argument has been repeatedly rejected.[3] In fact, courts have regularly found that an efficient market has been established based on evidence of some or all of the first four *Cammer*

---

requirements of Rule 702, and Plaintiffs reserve the right to move to exclude the testimony should it be offered for any other purpose.

[3]   The case cited by Defendants, *In re Fed. Home Mortg. Corp. (Freddie Mac) Sec.*, 281 F.R.D. 174 (S.D.N.Y. 2012), provides no support. Rather, Judge Cedarbaum simply found that for the security at issue the *Cammer* cause-and-effect factor was the most critical evidence of market efficiency. *Id.* at 182. As numerous courts have recognized, the *Freddie Mac* decision is distinguishable from most cases, including this one, because of the unique circumstance of the security at issue. *See In re Comput. Scis. Corp. Sec. Litig.*, 288 F.R.D. 112, 120 (E.D. Va. 2012) (*Freddie Mac* "is distinguishable because the stock there in question was a limited series of preferred shares, which are traded in patterns significantly different from the trading patterns typical of common shares."); *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 2015 WL 5000849, at *7 (S.D.N.Y. Aug. 20, 2015) (same).

Defendants' expert also claims that the first four *Cammer* factors and the *Krogman* factors cannot evidence market efficiency. Dkt. No. 73-1 ("Gompers Rpt."), ¶¶28-29. At his deposition, however, Gompers admitted that he was unaware of any academic text or legal opinion that would support his claim. *See* October 2, 2015 Deposition Transcript of Paul A. Gompers ("Gompers Trans."), attached hereto as Exhibit B, 141:5-143:8. Gompers further admitted that he did not dispute Feinstein's finding that Intercept stock met the requirements of the first four *Cammer* factors and all of the *Krogman* factors. *Id.* at 146:13-16; 146:23-147:2.

- 3 -

factors and the *Krogman* factors.[4]  As Judge Scheindlin recently held in *Barclays*, "***Cammer 5 Is Not Dispositive of Market Efficiency***" and "***not even the Cammer court considered the fifth factor necessary***, stating only that 'it would be helpful to a plaintiff seeking to allege an efficient market . . . .'"[5]  *Barclays*, 2015 WL 5000849, at *8-*9.

### III.  Feinstein's Event Study Evidences Market Efficiency

Plaintiffs do not rest on the undisputed evidence establishing the first four *Cammer* factors and the three *Krogman* factors, and have also submitted evidence establishing that Intercept's stock reacted to new, material information – the cause-and-effect relationship central to *Cammer* factor five.  Specifically, Plaintiffs' expert performed an event study analysis which demonstrated that Intercept's stock price reacted immediately and in a statistically significant manner to each of the disclosures about OCA and the FLINT trial that are at the heart of this litigation.  *See* Dkt. No. 66 ("Feinstein Decl."), ¶¶118-146.  Defendants respond by claiming that Feinstein made three "errors" – (1) using a two-day event window to measure Intercept's stock price reaction, (2) testing allegation-related days for market efficiency and (3) ignoring purported evidence that Intercept's stock may have responded to "stale news."  Opp. at 8-21.  Defendants are wrong on each count.  Moreover, Defendants cannot deny, and their own expert admitted at deposition, that under any event study methodology, Intercept's stock price quickly reacted to the new disclosures regarding

---

[4]  *See, e.g.*, *In re Goldman Sachs Grp., Inc. Sec. Litig.*, 2015 WL 5613150, at * 6 (S.D.N.Y. Sept. 24, 2015) (finding "no real dispute concerning the market efficiency" where the defendants only "take issue with [the] evaluation of the fifth *Cammer* factor"); *Smilovits v. First Solar, Inc*., 295 F.R.D. 423, 437 (D. Ariz. 2013) (efficient market established by *Cammer* factors one through four); *In re Diamond Foods, Inc.*, 295 F.R.D. 240, 250 (N.D. Cal. 2013) (plaintiff demonstrated market efficiency where defendant did not contest first four *Cammer* factors and defendant's expert only opined on "flaws in plaintiff's event study").

[5]  Defendants try to distinguish *Barclays* by claiming it was "limited to the factual context of that case." Opp. at 10 n.11.  Judge Scheindlin set forth no such limitation.  To the contrary, the court explicitly rejected the argument that the fifth *Cammer* factor was dispositive, citing to a litany of cases both within and outside the Second Circuit.  *Barclays*, 2015 WL 5000849, at *8-*9.

- 4 -

OCA and the FLINT trial during the relevant periods.  Gompers Trans. at 238:24-240:16.  This is irrefutable evidence of market efficiency.

> **A.  Feinstein Appropriately Used One- and Two-Day Event Windows to Determine that Intercept Stock Traded in an Efficient Market**

Defendants, and their expert, argue that Feinstein's event study was "flawed" because he measured Intercept's stock price reaction over two days.  Opp. at 10-17; Gompers Rpt., ¶¶42-49.  There is no flaw.  First, Feinstein's event study utilized **both** one-day and two-day event windows.  Indeed, for each of the disclosure periods analyzed, Feinstein established that on the day immediately following the relevant disclosures there was a statistically significant reaction in Intercept's stock price.  Feinstein Decl., ¶¶121-122; 131-132; 140-141.  Defendants cannot refute that fact.

Second, the use of a two (or more) day event window to measure a stock price reaction is well established in academic literature and widely accepted by courts.  As the *Barclays* court recognized, "[a] ***two- to three-day window is common in event studies***" and "***it is standard for experts to utilize an event window including both the day of the event and the day following an event***."  2015 WL 5000849, at *18.[6]  Neither Defendants nor their expert can point to authority to the contrary.[7]  At his deposition, Gompers admitted that he was not aware of ***any*** academic text stating

---

[6]  *See also In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 635 (3d Cir. 2011) ("That some information took ***two days*** to affect the price does not undermine a finding of efficiency."); *In re Xcelera.com Sec. Litig.*, 430 F.3d 503, 513 n.11 (1st Cir. 2005) (rejecting defendants' argument that a ***two-day*** event window would be inconsistent with an efficient market); *In re Vivendi Universal, S.A. Sec. Litig.*, 634 F. Supp. 2d 352, 372 (S.D.N.Y. 2009) (using a ***three-day*** window for analysis); Jonathan R. Macey et al., *Lessons from Financial Economics: Materiality, Reliance, and Extending the Reach of Basic v. Levinson*, 77 Va. L. Rev. 1017, 1031 (1991) ("When computing a stock return due to an event, financial economists often define the event period as the ***two-day*** period consisting of the announcement day and the following day.").

[7]  None of the cases cited by Defendants state that it is improper to use a multi-day event window to measure a stock price reaction or evaluate market efficiency.  Rather, they simply provide that in certain circumstances (not present here) there is no need to consider the price reaction after a single trading day.  For example, Defendants claim that the decision in *Erica P. John Fund, Inc. v. Halliburton Co.*, 2015 WL

- 5 -

that the use of a two-day event window was improper when measuring stock price reaction to new news.  Gompers Trans. at 104:16-22; 110:3-17; 113:7-20; 129:16-130:8; 130:21-131:3; 131:21-132:20.  In fact, in the *Barclays* case Gompers "***agree[d] that event studies often use a two-day window, the date of the announcement and the day after***."  2015 WL 5000849, at *18 n.183  *See also* Rebuttal Declaration of Professor Steven P. Feinstein ("Feinstein Reb."), filed herewith, ¶¶32-38.[8]

Third, the specific circumstances here make the use of two-day event windows particularly applicable.  Economists and courts recognize that numerous factors can affect the speed at which new information will be reflected in the price of a particular stock.  For this reason, the Supreme Court expressly refused to adopt any particular theory of market efficiency and "*Basic* does ***not*** require that stocks reflect ***all*** public information within any specific time-frame or to any specific degree."  *Barclays*, 2015 WL 5000849, at *5 (some emphasis in original).  Among the factors that will affect the speed of price incorporation are how the news reaches investors, the magnitude of the news, whether investors were expecting the disclosure of new information and the presence of

---

4522863 (N.D. Tex. July 25, 2015), "explicitly reject[ed] price reaction over a two-day period as evidence of market efficiency." Opp. at 11. In fact, the *Erica P. John* court was addressing the issue of "price impact," not market efficiency, and found that a two-day window was not appropriate there because there was an "absence of price impact throughout Day 1." 2015 WL 4522863, at *16. That is not the situation here, where Intercept's stock price reacted immediately to each of the relevant disclosures. Defendants also cite to *In re IPO Sec. Litig.*, 260 F.R.D. 81, 95 (S.D.N.Y. 2009), but there Judge Scheindlin held "there is no consensus as to how quickly share prices must change to justify a finding of efficiency." None of the remaining cases cited by Defendants say otherwise.

[8]  Recognizing the weight of academic studies utilizing multi-day event windows to measure stock price reactions (and his own prior testimony), Gompers tries to devise a distinguishing rule. Namely, he claims that multi-day windows are only used "where the date of the announcement is known but its precise timing is unknown." Gompers Rpt., ¶45; Opp. at 16. Gompers' purported rule, however, has absolutely no support in the academic literature and is entirely inconsistent with the manner in which event studies are actually conducted. Gompers Trans. at 113:7-20; Feinstein Reb. at ¶38; *Fogarazzo v. Lehman Bros.*, 263 F.R.D. 90, 104 (S.D.N.Y. 2009) (accepting event study with three-day event window and rejecting argument that "where the timing of discrete events was ascertainable, only the stock price movement on the particular trading day should matter").

confounding information.  *See* Feinstein Decl., ¶¶97-100; Feinstein Reb., ¶38.  These factors are all in play here:

- January 9-10, 2014:  Defendants made multiple statements about OCA and the FLINT trial both before the market opened ***and*** after the market closed on January 9, 2014.  While Defendants' expert assumes that no additional information was disclosed in Intercept's conference call on the evening of January 9, the facts as set forth in the Complaint show otherwise.  *See* Dkt. No. 26, ¶¶41-42.  These additional disclosures could not have affected Intercept's stock price until January 10, the second day of Feinstein's event window.  Moreover, the magnitude of the (false and misleading) news about OCA and the FLINT trial, described as both "unexpected" and a "major milestone," warrants measuring Intercept's stock price reaction over the two-day window, January 9-10, 2014.  Feinstein Reb., ¶¶52-56.

- January 13-14, 2014:  The disclosures of the truth about OCA and the finding of significant lipid abnormalities that started on the evening of January 10, 2014 were also shocking and took the market by surprise.  Dkt. No. 26, ¶¶50-54.  Additionally, as previously detailed, Defendants initiated a campaign of deception, getting analysts to rebut the NIDDK's disclosure and issue positive reports about Intercept on January 12 and 13, 2014 in an effort to distract the market and prevent a stock price decline.  *See* Dkt. No. 61.  Indeed, as with January 9-10, 2014, reporters specifically noted that Intercept's stock price reaction on January 13 ***and*** 14 was due to the FLINT trial disclosures.  Dkt. No. 26, ¶¶44, 54.[9]  Feinstein Reb., ¶¶57-61.

- May 19-20, 2014:  The final disclosure of the truth about OCA and the FLINT trial was initially made after the market closed on May 16, 2014.  The disclosure, in a report sent to only 200 investors, was the subject of speculation throughout the following trading day (May 19, 2014), but was not made publicly available until the morning of May 20, 2014.  Feinstein Decl., ¶38; Gompers Trans. at 249:7-250:5; 250:21-251:7.  Because of the extremely limited distribution of the disclosure prior to May 20, 2014, the use of the two-day event window, May 19-20, 2014, is particularly appropriate.  Feinstein Reb., ¶¶62-66.

Given these facts, as well as the relevant academic literature and legal opinions, Feinstein's use of two-day event windows was not flawed and the results of the event study testing those disclosure

---

[9] In his Report, Gompers chastised Feinstein for citing to market watchers who recognized that Intercept's stock price reacted to OCA and FLINT trial disclosures over the two-day periods, January 9-10 and January 13-14, 2014.  Gompers Rpt., ¶43.  At his deposition, however, Gompers admitted that it is appropriate to "assess market commentary" about what was affecting a stock's price.  Gompers Trans. at 77:6-15.

- 7 -

windows (as well as the one-day windows) strongly supports the conclusion that Intercept stock traded in an efficient market.[10]

### B. The Stock Price Reaction to Disclosures About OCA and the FLINT Trial Demonstrate Market Efficiency

Defendants next argue that Feinstein's selection of disclosure events related to the allegations is somehow "unscientific and biased." Opp. at 17-21. Given that Plaintiffs are proving that Intercept's stock price reacted to new information during the Class Period, and that the most important disclosures about the Company during the Class Period and surrounding year concerned OCA and the FLINT trial, Feinstein's decision to test those OCA and FLINT trial disclosures identified in the Complaint was objective, logical and appropriate. Feinstein Decl., ¶¶93-95.[11] Defendants again craft a rule – this time that a market efficiency event study must not look at allegation-related disclosures – that they cannot support. No case cited by Defendants or academic text cited by Gompers holds that it is improper to use allegation-related disclosures in assessing market efficiency. Gompers Trans. at 194:25-195:5. The most important question here is whether

---

[10] Defendants and their expert also conjure a rule that a two-day window is not appropriate where there is "price stabilization" on the first day. Opp. at 17; Gompers Rpt., ¶¶62-64. They cite nothing to support this rule. Why? Because, the purported "stabilization" Defendants point to is nothing more than the widely recognized fact that trading on the national exchanges, including NASDAQ, is concentrated around the opening and closing of the market. Feinstein Reb., ¶¶71-75. What Defendants cannot deny is that Intercept's stock price moved, in a statistically significant manner, in the same direction over all of the two-day windows employed by Feinstein. *See also Cross v. 21st Century Holding Co.*, 2002 WL 31158901, at *6-*7 (S.D.N.Y. Sept. 27, 2002) (rejecting argument that event window should be limited to one-day where the stock price "stabili[zed]" for a brief period following the disclosure).

[11] Gompers argues that Feinstein erred by not including Intercept's March 14, 2014 Form 10-K in his event study. Gompers Rpt., ¶40. The disclosures in that Form 10-K, however, were not included in Plaintiffs' allegations. In any event, both Feinstein and Gompers' event studies demonstrate that there *was* a statistically significant reaction in response to the Form 10-K on March 17, 2014, the first trading day after the filing was released. Feinstein Reb., ¶26 n.26.

- 8 -

Intercept's stock price reacted to new news about OCA and the FLINT trial, and Feinstein's event study answers that in the affirmative.[12]

### C. There Is No Evidence to Support Defendants' Claim that Intercept's Stock Price Moved in Response to "Stale News"

Defendants charge Feinstein with ignoring evidence that Intercept's stock price reacted to "stale news" during the relevant periods. Opp. at 21-25. There is, however, no credible evidence for that proposition. As discussed above, the one-day and two-day stock price reactions on January 9-10, January 13-14 and May 19-20, 2014 were all in response to the disclosure of new information about OCA and the FLINT trial. Accordingly, Defendants' "stale news" argument for each of these periods is wholly predicated on the incorrect notion that stock prices in efficient markets will always fully incorporate news within one trading day. That is not what the academic literature says and it is not what legal opinions hold.

In an attempt to buttress their failed argument, Defendants point to three instances when they claim Intercept's stock price reacted to "stale news." Opp. at 22-25; Gompers Rpt., ¶¶67-73. The flaws with Defendants' purported examples are numerous and obvious:

- September 16-October 1, 2013: Defendants' expert claims that analyst reports issued on September 20 and 30, 2013 merely repeated information disclosed previously. Gompers Rpt., ¶¶68-69; Opp. at 22-23. The purported "disclosure" Gompers points to, however, is a "roadshow" presentation Intercept made to only seven Canadian investors. Based on nothing more than a calendar of meetings, Gompers guesses that the information later disclosed in the analyst reports must have been discussed with some or all of the Canadian investors. Gompers Trans. at 281:24-282:5; 285:17-21; 286:4-287:3; 288:25-289:19. Then, he assumes that that roadshow disclosure (if there was one) must be a "public disclosure" that would affect Intercept's stock price. *Id.* at 290:25-291:21. Nevermind that the market is comprised of hundreds of millions of investors and there is no evidence any of those seven Canadian investors

---

[12] The objective nature of Feinstein's selection of event days stands in sharp contrast to the subjective and backward methodology used by Gompers to cherry-pick dates for his "stale news" analysis. *See* Feinstein Reb., ¶¶76-82. Indeed, the methodology employed by Gompers was specifically criticized by the courts in cases cited by Defendants (*Brown v. China Integrated Energy, Inc.*, 2014 U.S. Dist. LEXIS 11764 (C.D. Cal. Aug. 4, 2014) and *In re PolyMedica Corp. Sec. Litig.*, 453 F. Supp. 2d 260 (D. Mass. 2006)).

even traded Intercept stock. *Id*. at 289:20-290:24; 293:24-294:6. Gompers' assumption of what comprises a public disclosure lacks any academic or legal support and defies logic. Moreover, Gompers and Defendants ignore that both of the analyst reports they claim were "stale news" contained new information about Intercept that had not been publicly disclosed previously. *Id*. at 299:18-300:23; 309:5-312:16; 319:2-20; Feinstein Reb., ¶¶83-87; 89-95.

- December 16-20, 2013: Next, Gompers claims that Intercept's stock price reacted to a news story on December 20, 2013 that just repeated information from an earlier analyst report. Gompers Rpt., ¶¶70-71; Opp. at 23. As Gompers conceded at his deposition, however, the December 20 stock price movement was not statistically significant based on the event study performed by Feinstein and using the full one year Estimation Period. Gompers Trans. at 326:2-21. Moreover, Gompers ignored the fact that the December 20 article did contain new information about Intercept's bile acid diarrhea trial. *Id*. at 322:17-324:1. And, Gompers has done nothing to rule out that the stock price movement that day was simply a random event. *Id.* at 303:14-20; 325:5-11. In fact, Defendants' expert mistakes the fact that there is a substantial likelihood that the December 20, 2013 stock price movement was a random event as opposed to a response to company-specific information. Feinstein Reb., ¶¶83-87; 96-97.

- April 12-22, 2014: Gompers claims that Intercept's stock price reaction on April 22, 2014 must have been due to an article that day which repeated an earlier Intercept press release. Gompers Rpt., ¶¶72-73; Opp. at 23-24. Again, Defendants' expert has done nothing to account for the wide variety of Intercept news disclosed on April 22 or the fact that the stock price reaction could be a random occurrence. Gompers Trans. at 337:22-338:4. Indeed, Gompers has done nothing to account for the fact that the price reaction could have been in response to what *Bloomberg* identified as a "Social Velocity Alert." *Id.* at 335:2-337:21. Feinstein Reb., ¶¶83-87; 98.

In the end, Defendants' expert does ***not*** offer the opinion that Intercept stock traded in an ***in***efficient market and Defendants' attacks on Feinstein's event study and finding of efficiency miss their mark. Accordingly, *Cammer* factor five provides further support for applying the fraud-on-the-market presumption of reliance

**IV.   Conclusion**

For the foregoing reasons, this case is appropriate for certification as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) and Plaintiffs' motion is properly granted.

| | |
|---|---|
| DATED:  October 14, 2015 | Respectfully submitted,<br><br>ROBBINS GELLER RUDMAN<br>  & DOWD LLP<br>TOR GRONBORG<br>TRIG R. SMITH<br>KEVIN A. LAVELLE<br>KEVIN S. SCIARANI<br>CARISSA J. DOLAN<br><br>             s/ TOR GRONBORG            <br>TOR GRONBORG<br><br>655 West Broadway, Suite 1900<br>San Diego, CA  92101-8498<br>Telephone:  619/231-1058<br>619/231-7423 (fax)<br>torg@rgrdlaw.com<br>trigs@rgrdlaw.com<br>klavelle@rgrdlaw.com<br>ksciarani@rgrdlaw.com<br>cdolan@rgrdlaw.com<br><br>ROBBINS GELLER RUDMAN<br>  & DOWD LLP<br>SAMUEL H. RUDMAN<br>DAVID A. ROSENFELD<br>58 South Service Road, Suite 200<br>Melville, NY  11747<br>Telephone:  631/367-7100<br>631/367-1173 (fax)<br>srudman@rgrdlaw.com<br>drosenfeld@rgrdlaw.com<br><br>Lead Counsel for Plaintiffs<br><br>POMERANTZ LLP<br>JEREMY A. LIEBERMAN<br>LESLEY F. PORTNOY<br>600 Third Avenue<br>New York, NY  10016<br>Telephone:  212/661-1100<br>212/661-8665 (fax) |

- 11 -

1081723_1

JOHNSON & WEAVER, LLP
W. SCOTT HOLLEMAN
99 Madison Avenue, 5th Floor
New York, NY  10016
Telephone:  212/802-1486
212/602-1592 (fax)

Additional Counsel for Plaintiffs

- 12 -

1081723_1

CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2015, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 14, 2015.

s/ TOR GRONBORG
TOR GRONBORG

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  torg@rgrdlaw.com

1081723_1

# Mailing Information for a Case 1:14-cv-01123-NRB

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Katherine Mary Bolger**
  kbolger@lskslaw.com,jcarlsen@lskslaw.com

- **Michael G. Bongiorno**
  michael.bongiorno@wilmerhale.com,WHMAO@WILMEHALE.COM

- **Carissa Jasmine Dolan**
  cdolan@rgrdlaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Tamar Batya Kaplan-Marans**
  tamar.kaplan-marans@wilmerhale.com

- **Kevin A. Lavelle**
  klavelle@rgrdlaw.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Gregory Bradley Linkh**
  glinkh@glancylaw.com

- **Peter Loftus**
  kbolger@lskslaw.com

- **Lesley F Portnoy**
  lfportnoy@pomlaw.com

- **James W. Prendergast**
  james.prendergast@wilmerhale.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,iveneck@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Ari Joseph Savitzky**
  ari.savitzky@wilmerhale.com

- **Kevin S. Sciarani**
  ksciarani@rgrdlaw.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Trig Randall Smith**
  trigs@rgrdlaw.com,hectorm@rgrdlaw.com,e_file_sd@rgrdlaw.com,kirstenb@rgrdlaw.com

- **Joseph Jong Seon Yu**
  joseph.yu@wilmerhale.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`