UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE INTERCEPT PHARMACEUTICALS, INC. SECURITIES LITIGATION | : : : : : : : : : | 14 Civ. 1123 (NRB)<br><br>ECF Case<br><br>**ORAL ARGUMENT REQUESTED** |

# SURREPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**WILMER CUTLER PICKERING
 HALE AND DORR LLP**

7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: 212-230-8800
Facsimile: 212-230-8888

*Counsel for Defendants Intercept
Pharmaceuticals, Inc., Mark Pruzanski, and
David Shapiro*

## ARGUMENT

**I.      Plaintiffs' New And Improper Definition Of Market Efficiency Concedes The Flaw In Using Two-Day Event Windows.**

As Plaintiffs' Reply Memorandum and the Reply Declaration of Dr. Feinstein make clear, the fraud-on-the-market presumption in this case, and hence class certification, turns on whether continued price reaction over ***two days*** is empirical evidence of market efficiency. Unable to show rapid ***and*** full absorption within a single trading day, Plaintiffs and Dr. Feinstein retreat from the accepted definition of market efficiency upon which they relied in their initial submissions: "a market in which available information is ***rapidly incorporated into the price*** of a security" ***and*** "in which prices ***always 'fully reflect'*** available information." Feinstein Decl. ¶¶ 30, 34 (emphasis added).[1] Plaintiffs now assert that, in an efficient market, prices ***begin*** to react quickly to new information, regardless of how long it takes the prices to ***fully*** incorporate the information. *See* Reply 5-7; Feinstein Rep. ¶¶ 18, 34-35, 51. That is not an efficient market.

As courts in this District have concluded, in an efficient market, "share prices effectively incorporate new information *within hours of the announcement*," *In re IPO Sec. Litig.*, 260 F.R.D. 81, 102 (S.D.N.Y. 2009) (emphasis added), or within "*one full day* of trading," *In re Parmalat Sec. Litig.*, No. 04 MD 1653, 2008 WL 3895539, at *9 (S.D.N.Y. Aug. 21, 2008) (emphasis added).[2] Economists also recognize that in an efficient market, stock prices adjust within minutes or hours, and "daily data" properly measures the stock-price response "by the end of the trading day." *See* Gompers Rpt. ¶¶ 23-24 (quoting Fama; citing Greene and Watts,

---

[1] "Feinstein Decl." refers to Dr. Feinstein's initial Declaration submitted with Plaintiffs' Motion. "Gompers Rpt." refers to the Expert Report of Dr. Gompers submitted in support of Defendants' Opposition. "Feinstein Rep." refers to the Reply Declaration of Dr. Feinstein submitted with Plaintiffs' Reply. "Gompers Decl." refers to the Declaration of Dr. Gompers submitted herewith.

[2] Defendants' cases clearly and affirmatively conclude that price absorption in an efficient market is complete within one trading day. *See also In re PolyMedica Corp. Sec. Litig.*, 453 F. Supp. 2d 260, 278 (D. Mass. 2006) (holding that, in an efficient market, "the reaction to news [must] be *fully* completed on *the same trading day as its release*—perhaps even within hours or minutes" (emphasis added; citation omitted)). Plaintiffs' criticism that these authorities do not expressly reject the use of a two-day window is pure sophistry, *see* Reply 5-6 n.7, and no substitute for their failure to offer empirical evidence of rapid ***and*** full absorption within one trading day.

Woodruff and Senchack); *cf.* Gompers Dep. 110:18-111:11 (literature concludes multi-day reactions are inefficient).[3] Tellingly, Plaintiffs have not identified a single case from this District holding that a market is efficient based upon an event study showing *only* two-day price reactions with no evidence of complete absorption within one trading day.[4]

Not only does Dr. Feinstein's new definition contradict the established definition in this District, it lacks any support. The Patell and Wolfson study, which Dr. Feinstein mentions for the first time on Reply, *see* Feinstein Rep. ¶ 36, concluded that most stock price adjustments occurred within ten minutes of the announcement, and to the extent there was any reaction observed the following day, it was only an "overnight adjustment" that occurred within the first thirty minutes of trading, *see* Gompers Decl. ¶ 7. Even if the forty year-old trading data used in that study was still an accurate measure of absorption time in an efficient market—which it is not—it offers Plaintiffs no support when trying to explain the continuing price movement Dr. Feinstein observes throughout Day 2 of his event study.[5] *See* Gompers Rpt. ¶¶ 23-24 & n.31; Gompers Decl. ¶ 7 & n.16. Another source that Dr. Feinstein cites for the first time on Reply only further confirms that in an efficient market "the market price instantly (or at least very

---

[3] Contrary to Plaintiffs' assertion, *see* Reply 6, in *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, No. 12-cv-5329, 2015 WL 5000849 (S.D.N.Y. Aug. 20, 2015), Dr. Gompers did not testify that a two-day event window is appropriate for establishing market efficiency where the timing of the disclosures is known, *see* Gompers Decl. ¶ 9. Plaintiffs repeatedly mischaracterize Dr. Gompers's testimony and evidence. *See id.* App. A.

[4] In *Barclays*, the plaintiff's expert observed **one-day** price absorption for all but one of his identified events, and one event where the price absorption was complete by market open on Day 2. *See* Report of Dr. Finnerty at 20-24, 51-52 (considering one day returns), ECF No. 140; Rebuttal Report of Dr. Finnerty at 10-11, Supp. Ex. 5 (considering one day returns), ECF No. 141. Similarly, *Fogarazzo v. Lehman Bros.* is also inapposite. *See* 263 F.R.D. 90 (S.D.N.Y. 2009). There, the court did not find that a multi-day price reaction was evidence of market efficiency. Rather, the expert "convincingly" justified the use of a multi-day event window to prove the *materiality* of the disclosures at issue (based on circumstances not present here, *see* Opp. 15). *See* 263 F.R.D. at 102-04. In fact, the expert opined that "there is a general consensus that [in an efficient market] the bulk of the reaction to an information event appears to take place quite quickly, **certainly within the trading day**." Expert Report of Dr. Irvine at 21-22, 2004 WL 5918067, at *12 (emphasis added). The expert also stated that "usually, there are no significant [returns] in days -1 or +1 [of an event window], [because] markets are **efficient** at incorporating information into prices." Reply Expert Report of Dr. Irvine at 4 n.1, 2009 WL 7583004, at *3 n.1 (emphasis added). Finally, *In re Vivendi Universal, S.A. Sec. Litig.* also does not support Plaintiffs' position because the court assessed *loss causation* on summary judgment, not market efficiency, and did not conclude that market absorption over two days proves market efficiency. *See* 634 F. Supp. 2d 352, 372 (S.D.N.Y. 2009).

[5] Dr. Feinstein's citation to Woodruff and Senchack is also misplaced because it ignores that, although that study tested for a two-day adjustment, the authors concluded that full adjustment to news occurred "within a few hours during the announcement day." Catherine Woodruff & A.J. Senchack, *Intradaily Price Adjustments of NYSE Stocks to Unexpected Earnings*, 43 J. of Fin. 467, 481 (1988); Gompers Decl. at ¶ 6. *Contra* Feinstein Rep. ¶ 37.

*quickly*) *and fully* incorporates all publicly available information about the stock." Br. of Fin. Econ. as *Amici Curiae* in Supp. of Resp'ts at 5, *Halliburton Co. v., Erica P. John Fund, Inc*. 134 S. Ct. 2398 (2014), 2014 WL 526436, at *5 (emphasis added) (cited at Feinstein Rep. ¶ 19).

## II. The Alleged "Factors" Plaintiffs Advance To Justify A Two-Day Price Reaction As Evidence Of Market Efficiency Are Meritless.

For the first time on Reply, Plaintiffs and Dr. Feinstein attempt to justify two-day event windows by claiming that "numerous factors" purportedly explain why "protracted and continuing" price reaction is consistent with market efficiency. *See* Reply 5-8; Feinstein Rep. ¶¶ 32-39, 55, 60, 65-66.[6] Dr. Feinstein provides no authority supporting his assertion that these alleged "factors" are even relevant when assessing full absorption speed in efficient markets, much less provide any of his own analysis *showing* that the factors *in fact* caused slow absorption here in a manner consistent with an efficient market. *See* Feinstein Rep. ¶¶ 55, 59-60, 65-66.[7] At the same time, he ignores the academic literature showing that his alleged factors *do not* cause protracted and continuing absorption. *See* Gompers Decl. ¶¶ 10-17.[8]

## III. Plaintiffs' Attempt To Re-Define Dr. Feinstein's Event Selection Criteria Cannot Cure His Study's Bias.

Despite initially defining his event selection criteria as "information related to the allegations in the Complaint," Feinstein Decl. ¶ 94, on Reply, Dr. Feinstein attempts to re-define

---

[6] Dr. Feinstein's initial Declaration contained one conclusory sentence referencing only some of these factors, but was unsupported by any authority or explanation of how they impacted price reaction, let alone how they applied in the context of this case. *See* Feinstein Decl. ¶ 97.

[7] Dr. Feinstein cites only to the Patell and Wolfson article from several decades ago that references multi-day price reaction where "investors . . . are unable to execute intraday trading strategies," and quotes out of context a passage concerning "smaller firms" or "less regular announcements." *See* Feinstein Rep. ¶ 36; Gompers Decl. ¶ 10 n.27. But noticeably absent from his Reply Declaration is any analysis or opinion that any of *these* factors impacted the speed of absorption for Intercept's stock. *Compare* Feinstein Rep. ¶ 36 *with* Feinstein Rep. ¶¶ 55, 60, 65-66.

[8] Each of the unsubstantiated "factors" that Dr. Feinstein alleges—but does not demonstrate—caused the protracted reaction during each event window is contradicted by academic literature that Dr. Feinstein makes no attempt to distinguish. *Compare* Feinstein Rep. ¶ 55 *with* Gur Huberman & Tomer Regev, *Contagious Speculation and a Cure for Cancer: A Nonevent that Made Stock Prices Soar*, 56 J. of Fin. 387, 390 (2001) (observing one-day price absorption of news of potential cancer cure, news of at least as great a magnitude as that here). *Compare* Feinstein Rep. ¶ 60 *with* Roger K. Loh & René M. Stulz, *When Are Analyst Recommendation Changes Influential?*, 24 Rev. of Fin. Studies 593, 617-19 (2011) (concluding only a limited number of analysts are influential enough to change market prices with their opinion or spin absent new value-relevant news, and even those analysts do so only 22% of the time). *Compare* Feinstein Rep. ¶¶ 65-66 *with* Frederic S. Mishkin, *The Economics of Money, Banking, and Financial Markets* 700 (6th ed. 2001) (explaining that only a few recipients are necessary for publicly available information to be rapidly and fully incorporated into the stock price). *See also* Gompers Decl. ¶¶ 12-17.

his criteria as "product development news," Feinstein Rep. ¶¶ 22, 30.  Re-naming his criteria, however, does not correct for the event selection bias that taints his event study.  Dr. Feinstein's criteria was never, as he now claims, "important new information concerning [Intercept's] lead product candidate."  Indeed, Dr. Feinstein did not include the other days during his Examination Period in which "product development news" was disclosed.  *See* Gompers Decl. ¶ 18 & n.43.  Dr. Feinstein cannot escape that he set out to analyze only the days identified in the Complaint.  *See* Feinstein Rep. ¶ 26 n.26 (explaining he did not analyze Intercept's March 2014 10-K because it "was not identified in the operative complaint").  Dr. Feinstein's approach ensured that he only analyzed days known *ex ante* to contain large returns.  Accepting his method would enable any securities class action plaintiff to prove market efficiency regardless of whether the stock at issue *consistently* reacted rapidly and fully to new information.  *Cf.* Gompers Decl. ¶ 19.

**IV.    Plaintiffs' Criticism of Dr. Gompers's Evidence Of Market Inefficiency Is Incorrect And Mischaracterizes Dr. Gompers's Testimony And Analysis.**

On Reply, Plaintiffs and Dr. Feinstein rely on a series of mischaracterizations to criticize Dr. Gompers's methodology that shows Intercept stock's repeated and statistically significant movement in response to stale news.  *See* Reply 9-10; Feinstein Rep. ¶¶ 76-98; *cf.* Gompers Decl. ¶ 3 & App. A.  Dr. Feinstein conducts no responsive analysis, however, and nothing in Plaintiffs' Reply submissions undermines Dr. Gompers's stale news analysis.

*First*, to correct for a significant increase in the volatility of Intercept's stock returns after the Class Period and ignored by Dr. Feinstein, Dr. Gompers properly used the Goldfeld-Quandt test for his regression model to accurately identify statistically significant price movement.  *See* Gompers Decl. ¶¶ 26-28; *contra* Feinstein Rep. ¶¶ 44-49.  The Goldfeld-Quandt test is particularly appropriate here because there were two sub-periods during the Examination Period with different volatilities such that it is incorrect to assume, as Dr. Feinstein did, that Intercept's

stock price behavior remained the same during his Examination Period.  *See* Gompers Decl. ¶ 26 & n.71.  Although Dr. Feinstein suggests two supposedly "more common" tests, *see* Feinstein Rep. ¶ 44, neither is applicable.  The Chow test assumes that there was *no* change in residual return volatility over the examined period, and the Breusch-Pagan test only applies where there is reason to believe that changes in the explanatory variables (*i.e.* market industry indices) caused residual return volatility; neither is the case here.  *See* Gompers Decl. ¶ 27.[9]

**Second**, Plaintiffs and Dr. Feinstein are simply incorrect in claiming that Dr. Gompers failed to account for the possibility that other information released on the stale news days caused the statistically significant returns.  *Contra* Reply 9-10; Feinstein Rep. ¶¶ 82-88, 92-95, 97-98.  They ignore that Dr. Gompers analyzed the total mix of information disclosed to the market on the stale reaction days to determine whether any other potentially value-relevant news caused the price reaction, and that he specifically considered whether analyst reports attributed the reaction to particular news.  *See* Gompers Decl. ¶ 22; Gompers Dep. 185:7-18; Gompers Rpt. ¶¶ 69-70, 72, Exs. 5A-5C.[10]  Tellingly, Dr. Feinstein does not identify—because he cannot—other value-relevant news released during market hours on the stale news days.  *See* Gompers Decl. ¶ 22.[11]

---

[9] Dr. Feinstein also misleadingly states that "the statistical significance that Dr. Gompers found disappears" upon adjusting the sub-division point in the Goldfeld-Quandt test by one day.  Feinstein Rep. ¶ 49.  This is disingenuous.  Although the statistical significance following Dr. Feinstein's adjustment is no longer at the 99% confidence level, the statistical significance remains at the 98% confidence level.  *See* Gompers Decl. ¶ 28.

[10] Dr. Feinstein's discussion of random volatility is a red herring.  *See* Feinstein Rep. ¶¶ 85-86.  Dr. Gompers permissibly concluded from the statistical significance of each of the residual returns that the reaction to stale news was not random with 95% certainty.  *See* Gompers Dep. 304:4-10; 325:5-11; 337:22-338:4.  Plaintiffs, of course, fail to mention that the possibility that statistically significant returns are random also applies to Dr. Feinstein's analysis, as it would to any event study.  *See* Gompers Decl. ¶ 24.  The most *both* Dr. Feinstein and Dr. Gompers can conclude with certainty is that there is only a small chance that each of their analyzed significant returns were random rather than caused by a reaction to the potentially value-relevant information that they identified.  *See id*.

[11] Plaintiffs' and Dr. Feinstein's additional assertion that Dr. Gompers's stale news analysis suffers from hindsight bias miscomprehends the nature of Dr. Gompers's analysis, and once again mischaracterizes Dr. Gompers's testimony.  *See* Reply 9 n.12; Feinstein Rep. ¶¶ 77-81 & n.66.  The cases upon which Plaintiffs rely—the same cases that Defendants cited in their Opposition—hold that cherry-picking days with the largest statistically significant returns undermines the reliability of affirmative event studies offered to show a *consistent* cause and effect relationship between new information and price absorption; for that reason, the cherry-picking critique undermines Dr. Feinstein's event study.  *See* Opp. 18-19.  But, as Dr. Gompers made clear at his deposition, hindsight bias and cherry-picking are not an issue when evaluating whether *specific* stock price reactions are consistent with efficiency.  *See* Gompers Dep. 193:23-194:9; 174:25-175:22; *see also* Gompers Decl. ¶ 21.  Dr. Feinstein simply ignores the academic literature that supports Dr. Gompers's selection criteria and methodology.  *Compare* Gompers Rpt. ¶¶ 58-59 *and* Gompers Decl. ¶ 20 & n.49 *with* Feinstein Rep. ¶¶ 77-81 & n.66.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Class Certification should be denied.

Dated: November 10, 2015

Respectfully submitted,

**WILMER CUTLER PICKERING HALE AND DORR LLP**

By: /s/ *James W. Prendergast*
Michael G. Bongiorno
James W. Prendergast
Joseph J. Yu
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: 212.230.8800
Facsimile: 212.230.8888

*Counsel for Defendants Intercept Pharmaceuticals, Inc., Mark Pruzanski, and David Shapiro*

- 6 -