**ROBBINS GELLER RUDMAN & DOWD LLP**

| Atlanta | Chicago | Melville | Philadelphia | San Francisco |
| Boca Raton | Manhattan | Nashville | San Diego | Washington, DC |

Tor Gronborg
torg@rgrdlaw.com

January 25, 2016

*Via ECF and Facsimile*

The Honorable Naomi Reice Buchwald
United States District Court Judge
Daniel Patrick Moynihan, United States Courthouse
500 Pearl Street, Room 21A
New York, NY  10007-1312

      Re:    *In re Intercept Pharmaceuticals, Inc. Sec. Litig.*,
              No. 14-cv-1123-NRB (S.D.N.Y.)

Dear Judge Buchwald:

      Plaintiffs write in reply to defendants' January 22, 2016 letter (Dkt. No. 98), opposing plaintiffs' January 13, 2016 letter (Dkt. No. 91), regarding improperly withheld and redacted documents.

      **Draft Intercept Press Releases:**  Defendants have withheld more than 180 draft press releases from the January to May 2014 period.  While defendants claim that those releases were sent to Intercept's in-house counsel, Bryan Yoon, "for legal advice," the privilege log makes clear that in the majority of instances, Mr. Yoon was just one of multiple Intercept employees receiving the draft releases.  If Mr. Yoon actually provided advice on a draft release, or if an email to Mr. Yoon sought his legal advice (as opposed to the same request to review made to non-legal personnel), those communications can be redacted.  Otherwise, the draft press releases should be produced.

      *United Food & Commercial Workers Union v. Chesapeake Energy Corp.*, a case defendants cite, specifically states "[t]he fact that a copy of a document was distributed to the client's attorney, without a request for legal comment or advice and without responsive comments or notes made by the attorney, does not render it privileged."  2012 WL 2370637, at *10 (W.D. Okla. June 22, 2012).[1]  Defendants' secondary argument, that some of the draft releases are protected work

---

[1]  The cases cited by defendants do not support the position that draft press releases circulated to in-house counsel are attorney-client privileged.  In *Softview Computer Prods. Corp. v. Haworth, Inc.*, 2000 WL 351411, at *15 (S.D.N.Y. Mar. 31, 2000), the documents at issue were not draft press releases, but "requests for advice . . . regarding the timing and content of [the] contemplated press release."  In *Chesapeake Energy Corp.*, 2012 WL 2370637, at *9, the draft press releases "reflect[ed] notes and/or comments from their attorneys."  In *Macario v. Pratt & Whitney Can.*, 1991 WL 6117 (E.D. Pa. Jan. 17, 1991), the draft press release was sent solely to outside counsel specifically for legal review, and the attorney responded with substantive legal advice.  Moreover, defendants' attempts to distinguish plaintiffs' cases are misleading.  In *Calvin Klein Trademark Tr. v. Wachner*, 124 F. Supp. 2d 207, 210 (S.D.N.Y. 2000), the court held that the draft press release was neither work product nor attorney-client privileged because the draft, which was sent to counsel for comment, "on inspection, disclosed neither confidential client communications made for the purpose of seeking legal advice nor attorney work product."  The "disclosure" to which defendants refer in their letter is in reference to the court's discussion of subject matter waiver.  In *Rattner v. Netburn*, 1989 U.S. Dist. LEXIS 6876, at *13-*15 (S.D.N.Y. June 20, 1989), the court distinguishes between the draft press release itself, which did not contain attorney advice, and separate legal advice provided by an attorney concerning a press release, which could be privileged.  Defendants

Case 1:14-cv-01123-NRB   Document 100   Filed 01/25/16   Page 2 of 3

**ROBBINS GELLER RUDMAN & DOWD LLP**

Honorable Naomi Reice Buchwald
January 25, 2016
Page 2

product, is baseless. None of the cases cited by defendants support the notion that draft press releases, particularly ones that were not prepared by or at the direction of litigation counsel, qualify for work product protection. *Rattner*, 1989 U.S. Dist. LEXIS 6876, at *19 ("If counsel chose in this case to perform a publicist's functions, the documents prepared in that connection cannot be shielded by the work-product rule."); *Burke v. Lakin Law Firm, P.C.*, 2008 U.S. Dist. LEXIS 833, *8 (S.D. Ill. Jan. 7, 2008) ("[T]hough the work product doctrine may protect documents that were prepared for one's defense in a court of law, it does not protect documents that were prepared for one's defense in the court of public opinion.")

**Communications with Lazar and Makovsky:** Defendants argue that the public relations firms Lazar and Makovsky were "functional equivalents of Intercept employees" and were retained as a result of "anticipated litigation and heavy press scrutiny." Neither assertion is accurate. Neither firm had actually been retained by Intercept as of January 2014, and Makovsky was **never** retained by the Company. Indeed, for each of the relevant press releases in this case, readers were directed to contact in-house employees of Intercept, not Lazar or Makovsky, belying any notion that either entity was serving as the functional equivalent of an Intercept employee. *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213 (S.D.N.Y. 2011), the sole case defendants rely on for their "functional equivalent" argument, is not applicable due to its unique facts. *See Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 432 (S.D.N.Y. 2013) (distinguishing *In re Copper*); *Steinfeld v. IMS Health Inc.*, 2011 U.S. Dist. LEXIS 142288, at *5-*11 (S.D.N.Y. Dec. 9, 2011) (same). The suggestion that either firm was retained to deal with litigation or press scrutiny following defendants' January 9, 2014 fraudulent statements is also false. Both Makovsky and Lazar were invited to pitch for Intercept's business well before January 9, 2014 and there is no evidence either firm was retained with regard to any litigation.[2]

**Email Chains:** Defendants try to evade the issue by claiming that plaintiffs have insisted that "documents must be sent by an attorney" to be privileged. But, consistent with the case law, plaintiffs' position is that a communication must be made for the primary purpose of requesting or providing legal advice to be privileged. Email chains sent between non-legal Intercept employees, where Intercept in-house counsel, Mr. Yoon, is merely copied on the emails, have no indicia of legal advice being requested or provided. In defendants' view, any communication including an in-

---

claim that "the press release at issue [in *Rattner*] was not designed to 'assist in pending or impending litigation.'" Dkt. No. 98 at 1. As the court in *Rattner* held, that was because "Defendants have not shown that the proposed press release was primarily designed 'to assist in pending or impending litigation.'" *Id.* at *17-*18 (citation omitted). Defendants here have not done so, either. Defendants also claim that in *Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res., Inc.*, 2004 U.S. Dist. LEXIS 10197 (E.D. La. June 4, 2004), the press release solely concerned marketing advice and did not implicate SEC filings and disclosures. In fact, the draft press releases concerned the public company's quarterly earnings, and the court distinguished between SEC filings as public disclosures that necessitate legal advice due to "disclosure requirements" and press releases, which do not. *Id.* at *23-*25, *30-*31, *48-*49. Finally, in *Padgett v. City of Monte Sereno*, 2007 U.S. Dist. LEXIS 95396, at *5 (N.D. Cal. Dec. 20, 2007), the court never states that the draft press releases at issue were not sent to the client, contrary to defendants' representation here.

[2] Defendants fail to address the fact that even if the attorney-client privilege or work product protection applied to the Makovsky and Lazar materials, that protection has been waived due to defendants' (continuing) failure to take any steps to protect the confidentiality of these documents.

1112522_1

ROBBINS GELLER
Rudman & Dowd LLP

Honorable Naomi Reice Buchwald
January 25, 2016
Page 3

house attorney can be withheld as privileged so long as defendants characterize it as keeping in-house counsel "apprised of ongoing business developments." Dkt. No. 98 at 3. But, as recognized in *In re Pfizer Inc. Sec. Litig.*, communications must be "**predominantly legal in nature**" to be privileged. 1993 WL 561125, at *6 (S.D.N.Y. Dec. 23, 1993) (emphasis added). The fact that defendants have produced some email chains in which Mr. Yoon was a sender or recipient does not excuse defendants' improper withholding of documents, but simply demonstrates that they are using the attorney-client privilege as both a sword and shield.[3]

**Redacted Documents:** Defendants' suggestion that plaintiffs have prematurely raised the problems with improper redactions is not well taken. Plaintiffs have repeatedly flagged the problems with defendants' redactions and, in response, defendants have repeatedly stated that their redactions were appropriate. Indeed, the "premature" claim appears to be nothing more than an effort to distract from the examples of redactions in defendants' production that plaintiffs have proven were improper with documents produced by third-parties. These examples warrant, at a minimum, *in camera* review of defendants' redactions.

Sincerely,

TOR GRONBORG

TG:hsb
Enclosures
cc:  All Counsel (*via ECF*)

---

[3]  While defendants' delay in completing the production of threading reports is troubling, it does not change the fact that plaintiffs have already identified hundreds of improperly withheld emails and this issue is ripe for resolution.

1112522_1