UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ———————————————————— x |  |  |
| In re INTERCEPT PHARMACEUTICALS, INC. SECURITIES LITIGATION | : | Civil Action No. 1:14-cv-01123-NRB |
|  | : |  |
| ———————————————————— | : | CLASS ACTION |
|  | : |  |
| This Document Relates To: | : | PLAINTIFFS' MEMORANDUM OF LAW |
|  | : | IN SUPPORT OF UNOPPOSED MOTION |
| ALL ACTIONS. | : | FOR PRELIMINARY APPROVAL OF |
| ———————————————————— x | | SETTLEMENT |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   SUMMARY OF THE LITIGATION ...............................................................2

III.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ..................3

    A.    Terms of the Settlement ...............................................................3

    B.    The Standards for Reviewing a Proposed Settlement for Preliminary
          Approval ...............................................................................5

    C.    Preliminary Approval of the Settlement Should Be Granted.................................7

          1.    The Complexity, Expense, and Likely Duration of the Litigation
               Supports Approval of the Settlement..............................................7

          2.    The Reaction of the Class to the Settlement ................................................8

          3.    The Stage of the Proceedings.........................................................8

          4.    The Risk of Establishing Liability and Damages .......................................9

          5.    The Risks of Maintaining the Class Action Through Trial.......................10

          6.    The Ability of Defendants to Withstand a Greater Judgment...................10

          7.    The Reasonableness of the Settlement in Light of the Best Possible
               Recovery and the Attendant Risks of Litigation.......................................11

IV.   THE PROPOSED FORM AND METHOD OF CLASS NOTICE AND THE
      FORM OF THE PROOF OF CLAIM ARE APPROPRIATE...........................................12

    A.    The Scope of the Notice Program Is Adequate.......................................................12

    B.    The Proposed Form of Notice Comports with the Requirements of Due
          Process, the PSLRA, and Rule 23 and Is the Same or Similar to the
          Form(s) of Notice Routinely Approved by Courts in This Jurisdiction ...............13

V.    CERTIFICATION OF THE CLASS IS APPROPRIATE .................................................15

VI.   PROPOSED SCHEDULE ...............................................................................16

VII.  CONCLUSION...............................................................................................17

1134097_1

# TABLE OF AUTHORITIES

Page

**CASES**

*Allen v. Dairy Farmers of Am., Inc.*,
No. 5:09-cv-230, 2011 U.S. Dist. LEXIS 48479
(D. Vt. May 4, 2011) ................................................................................................5, 6

*Chatelain v. Prudential-Bache Sec.*,
805 F. Supp. 209 (S.D.N.Y. 1992) ................................................................................6

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ............................................................................................11

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ...........................................................................4, 5, 7, 9

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005) ................................................................................10

*Hicks v. Morgan Stanley & Co.*,
No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890
(S.D.N.Y. Oct. 24, 2005) ...............................................................................................7

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984),
*aff'd*, 818 F.2d 145 (2d Cir. 1987) ..............................................................................11

*In re Alloy, Inc. Sec. Litig.*,
No. 03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129
(S.D.N.Y. Dec. 2, 2004) .............................................................................................7, 9

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
MDL No. 1500, 2006 U.S. Dist. LEXIS 17588
(S.D.N.Y. Apr. 6, 2006) .......................................................................................7, 9, 11

*In re Currency Conversion Fee Antitrust Litig.*,
MDL No. 1409, 2006 U.S. Dist. LEXIS 81440
(S.D.N.Y. Nov. 8, 2006) ................................................................................................5

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510 (CPS), 2007 U.S. Dist. LEXIS 29062
(E.D.N.Y. Apr. 19, 2007) .............................................................................................12

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ..............................................................................8, 11

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090
   (S.D.N.Y. Sept. 29, 2003) ...................................................................................11

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11 MDL 2262 (NRB), 2014 U.S. Dist. LEXIS 172487
   (S.D.N.Y. Dec. 2, 2014) .......................................................................................5

*In re Luxottica Grp. S.p.A., Sec. Litig.*,
   No. CV 01-3285 (JBW)(MDG), 2005 U.S. Dist. LEXIS 27765
   (E.D.N.Y. Nov. 15, 2005) .....................................................................................13

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450
   (S.D.N.Y. Feb. 1, 2007) .......................................................................................12

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) .............................................................................6

*In re NASDAQ Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) .............................................................................6

*In re Platinum & Palladium Commodities Litig.*,
   No. 10CV3617, 2014 U.S. Dist. LEXIS 96457
   (S.D.N.Y. July 15, 2014) ......................................................................................6

*In re Prudential Sec. Ltd. P'ships Litig.*,
   164 F.R.D. 362 (S.D.N.Y. 1996),
   *aff'd sub nom. Toland v. Prudential Sec. P'ship Litig.*,
   107 F.3d 3 (2d Cir. 1996) .....................................................................................13

*In re Stock Exchs. Options Trading Antitrust Litig.*,
   No. 99 Civ. 0962 (RCC), 2006 U.S. Dist. LEXIS 87825
   (S.D.N.Y. Dec. 4, 2006) .......................................................................................14

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ..................................................................................10

*In re Warner Chilcott Ltd. Sec. Litig.*,
   No. 06 Civ. 11515 (WHP), 2008 U.S. Dist. LEXIS 99840
   (S.D.N.Y. Nov. 20, 2008) .....................................................................................4

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ..................................................................................11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)........................................................................................5

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982)......................................................................................14

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
   §78u-4(a)(7)...........................................................................................................14
   §78u-4(a)(7)(A)-(F) ...............................................................................................15

Federal Rules of Civil Procedure
   Rule 23...............................................................................................................12, 14
   Rule 23(a)...............................................................................................................15
   Rule 23(b)(3)...........................................................................................................15

## SECONDARY AUTHORITIES

*Manual for Complex Litigation* (3d ed. 1995)
   §30.41......................................................................................................................6

Svetlana Starykh & Stefan Boettrich,
   *Recent Trends in Securities Class Action: 2015 Full-Year Review*
   (NERA Jan. 25, 2016).............................................................................................12

# I.     INTRODUCTION

Lead Plaintiff George Burton and additional plaintiff Scot H. Atwood (the "Plaintiffs") respectfully submit this memorandum in support of their unopposed motion for preliminary approval of the settlement reached in this Litigation (the "Settlement"). The proposed Settlement provides a recovery of $55 million in cash to resolve this securities class action against defendants Intercept Pharmaceuticals, Inc., Dr. Mark Pruzanski, and Dr. David Shapiro (collectively, "Defendants"). The Settlement is contained in a Stipulation of Settlement entered into by all parties dated as of May 2, 2016 (the "Stipulation"), and filed concurrently herewith.[1]

Nearing the end of fact discovery, and with the full benefit of a substantial document production, depositions, and expert analysis, the parties entered into the Settlement with the assistance of an experienced mediator, John Van Winkle. The result is a very significant $55 million recovery that will be provided to the Class without the uncertainty of a lengthy trial and subsequent appeal.

By this motion, Plaintiffs seek entry of an order: (1) granting preliminary approval of the proposed Settlement; (2) approving the form and manner of giving notice of the proposed Settlement to the Class; and (3) setting a hearing date for final approval of the Settlement, the Plan of Allocation of the Net Settlement Fund, Lead Counsel's application for attorneys' fees and expenses, and Plaintiffs' application for an award reflecting their time and expenses (the "Settlement Hearing") and a schedule for various deadlines relevant thereto ("Notice Order"). As shown below, the proposed Settlement is an excellent result for the proposed Class, is fair, reasonable, and adequate under the governing standards in this Circuit, and warrants the approval of this Court.

---

[1]     Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulation.

- 1 -

## II.    SUMMARY OF THE LITIGATION

As the Court is aware, this case arises from allegations that Defendants made false and misleading statements in violation of §§10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, regarding the drug OCA, the FLINT trial for OCA as a treatment for nonalcoholic steatohepatitis ("NASH"), and the National Institute of Diabetes and Digestive and Kidney Diseases' ("NIDDK") reported finding of significant lipid abnormalities in that trial.

The Litigation was commenced on February 21, 2014.  On May 16, 2014, the Court consolidated the pending actions and appointed George Burton as Lead Plaintiff in accordance with the Private Securities Litigation Reform Act of 1995 ("PSLRA").  On June 27, 2014, Mr. Burton filed the operative Consolidated Complaint for Violations of the Federal Securities Laws.

Following full briefing and oral argument, the Court denied Defendants' motion to dismiss on March 4, 2015.  Thereafter, the parties commenced discovery which continued through March 2016.  At the time the parties reached an agreement-in-principle to settle the Litigation, fact discovery had been largely completed.  As part of that discovery, Plaintiffs' counsel issued more than 70 document and deposition subpoenas, received and reviewed more than 1.5 million pages of documents that had been produced by Defendants and third parties, and had taken numerous depositions, including the depositions of Intercept's Class Period Chairman, Intercept's CFO, the NIDDK's Dr. Averell Sherker and numerous other Intercept officers and third party witnesses.

Concurrent with fact discovery, on July 15, 2015, Plaintiffs filed a motion for class certification.  Following class certification discovery, which included the deposition of Defendants' expert on market efficiency, and full briefing, the Court heard oral argument on class certification on

- 2 -

January 20, 2016. At the time the parties reached an agreement-in-principle to resolve the Litigation, the motion for class certification was still pending.

In January 2016, the parties retained the services of John Van Winkle, a nationally-recognized mediator of complex cases and class actions. Following the exchange of detailed mediation statements and materials prepared by the parties' loss causation and damages consultants, the parties attended a mediation that continued over two days. At the conclusion of the mediation session, the parties reached an agreement-in-principle to resolve the Litigation, subject to the negotiation of mutually acceptable terms of a settlement agreement. Thereafter, the parties negotiated settlement terms and then the accompanying Stipulation of Settlement.

## III.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

### A.    Terms of the Settlement

The Settlement set forth in the Stipulation resolves the claims of the Class against Defendants. The Stipulation provides that Intercept will pay or cause to be paid $55 million in cash ("Settlement Amount"), inclusive of attorneys' fees and costs. Within ten business days of the entry of the Notice Order, the entire $55 million Settlement Amount will be paid to the Escrow Agent and the funds will be invested in United States Agency or Treasury Securities. Interest on the Settlement Amount will accrue for the benefit of the Class.

The recovery to individual Class Members will depend on variables, including the number of shares of Intercept common stock the Class Member purchased or acquired and when and at what price such purchases or acquisitions were made. In the event that 100% of the eligible common stock of Intercept purchased or acquired by Class Members participate in the Settlement, the estimated average distribution per share of Intercept common stock will be approximately $48.27

1134097_1

before deduction of any Court-approved fees and expenses. Historically, actual claim rates are lower than 100%, resulting in higher per share distributions.

The Notice of Pendency of Class Action and Proposed Settlement ("Notice") explains the terms of the Settlement, including that the Net Settlement Fund will be distributed to eligible Class Members who submit valid and timely Proof of Claim and Release forms ("Proof of Claim") pursuant to the proposed Plan of Allocation included in the Notice and subject to this Court's approval; there will be no reversion to Defendants. The Notice also informs Class Members of, among other information, Lead Counsel's application for attorneys' fees and expenses, and the proposed Plan of Allocation for distributing the Net Settlement Fund. The Notice further details: (i) the procedures for objecting to the Settlement, the Plan of Allocation, or the request for attorneys' fees and expenses; and (ii) the date, time, and location of the Settlement Hearing.

If the Court grants preliminary approval, the Claims Administrator will mail the Notice and Proof of Claim (*see* Exhibits A-1 and A-2) to Class Members who can be identified with reasonable effort. Additionally, the Claims Administrator will cause the Summary Notice (*see* Exhibit A-3) to be published once in *The Wall Street Journal* and once over a national newswire service.

The proposed Settlement is an extraordinary result for the Class. It provides a significant recovery in a case where Plaintiffs had largely completed fact discovery and were in a strong position to judge the strengths and weaknesses of their case. The $55 million recovery is certainly within, if not well-above, the range of what would be determined to be fair, reasonable, and adequate. Accordingly, Plaintiffs respectfully submit that an analysis of the *Grinnell* factors (*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)), set forth below, which apply to a court's determination of final approval of a settlement, also supports preliminary approval of this Settlement. *See also In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 U.S.

- 4 -

Dist. LEXIS 99840, at *4 (S.D.N.Y. Nov. 20, 2008) ("Although a complete analysis of [the *Grinnell*] factors is required for final approval, at the preliminary approval stage, 'the Court need only find that the proposed settlement fits "within the range of possible approval"' to proceed.")[2]; *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2014 U.S. Dist. LEXIS 172487, at *12 (S.D.N.Y. Dec. 2, 2014) ("Preliminary approval is 'not tantamount to a finding that [a proposed] settlement is fair and reasonable.'").

## B.      The Standards for Reviewing a Proposed Settlement for Preliminary Approval

Once a proposed settlement is reached, "a court must determine whether the terms of the proposed settlement warrant preliminary approval.  In other words, the court must make 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, 2006 U.S. Dist. LEXIS 81440, at *13 (S.D.N.Y. Nov. 8, 2006); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *LIBOR*, 2014 U.S. Dist. LEXIS 172487, at *12 ("at this stage, we need only decide whether the terms of the Proposed Settlement are 'at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard'").  "In determining whether to grant preliminary approval, the court starts with the proposition that 'there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.'" *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2011 U.S. Dist. LEXIS 48479, at *9 (D. Vt. May 4, 2011).

Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and falls within the range of approval, preliminary

---

[2]        Citations and footnotes are omitted and emphasis is added unless otherwise noted.

approval is generally granted. *See In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citing *Manual for Complex Litigation* §30.41 (3d ed. 1995)); *In re Platinum & Palladium Commodities Litig.*, No. 10CV3617, 2014 U.S. Dist. LEXIS 96457, at *36 (S.D.N.Y. July 15, 2014) ("Preliminary approval, at issue here, 'is at most a determination that there is what might be termed "probable cause" to submit the proposal to class members and hold a full-scale hearing as to its fairness.' A district court should preliminarily approve a proposed settlement 'which appears to be the product of serious, informed non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the reasonable range of approval.'"). "Once preliminary approval is bestowed, the second step of the process ensues; notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *NASDAQ*, 176 F.R.D. at 102.

"Preliminary approval is merely the first step in a multi-step process in which the . . . Settlement will be scrutinized by both the court and class members." *Allen*, 2011 U.S. Dist. LEXIS 48479, at *10. "It deprives no party or non-party of any procedural or substantive rights, and provides a mechanism through which class members who object to the . . . Settlement can voice those objections." *Id.* A strong initial presumption of fairness attaches to the proposed settlement if, as here, the settlement is reached by experienced counsel after arm's-length negotiations, and courts should accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992).

## C.   Preliminary Approval of the Settlement Should Be Granted

The Second Circuit has identified nine factors that courts should consider in deciding whether to grant final approval of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.  For the following reasons, each of the applicable *Grinnell* factors supports preliminary approval of the Settlement.

### 1.   The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement

Courts have consistently recognized the complexity, expense, and likely duration of the litigation are critical factors in evaluating the reasonableness of a settlement, especially where the settlement being evaluated is a securities class action.  *See, e.g.*, *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *6 (S.D.N.Y. Oct. 24, 2005); *In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129, at *6 (S.D.N.Y. Dec. 2, 2004) (approving settlement, noting action involved complex securities fraud issues "that were likely to be litigated aggressively, at substantial expense to all parties").

Securities fraud class actions brought under the PSLRA are notoriously complex and expensive to prosecute, and this case was no exception.  *See, e.g.*, *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, MDL No. 1500, 2006 U.S. Dist. LEXIS 17588, at *31 (S.D.N.Y. Apr. 6, 2006) (due to their "notorious complexity," securities class actions often settle to "circumvent[] the difficulty and uncertainty inherent in long, costly trials").  Plaintiffs here advanced numerous complex legal and

- 7 -

factual issues under the federal securities laws, requiring, *inter alia*, extensive motion practice, fact and expert document discovery, and deposition testimony.  Indeed, document discovery alone in this case involved more than 70 subpoenas to parties and non-parties, multiple document requests to Defendants and resulted in the production and review of over 1.5 million pages of documents.  A trial would likely have lasted at least two weeks and been very complicated for jurors, not to mention the fact that it would have been very expensive for the Class.  No doubt, an appeal would have followed, likely taking years to complete, regardless of the outcome.  Accordingly, this factor weighs strongly in favor of preliminary approval of the proposed Settlement.

### 2.     The Reaction of the Class to the Settlement

Plaintiffs have participated throughout the prosecution of the case and were actively involved in the decision to enter into settlement negotiations and the Settlement.  Notice regarding the Settlement has not yet been mailed or otherwise distributed.  In the event any objections are received after notice is disseminated, they will be addressed by Lead Counsel in connection with its motion for final approval of the Settlement.

### 3.     The Stage of the Proceedings

The volume and substance of Plaintiffs' and their counsel's knowledge of the merits and potential weaknesses of the claims alleged are unquestionably adequate to support the Settlement. This knowledge is based, first and foremost, on the fact that discovery was robust and substantially completed.  The accumulation of information resulting from discovery and consultation with experts permitted Plaintiffs and their counsel to be well-informed about the strengths and weaknesses of the case and to engage in effective settlement discussions with Defendants.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("the question is whether the parties had

adequate information about their claims"). This factor strongly supports preliminary approval of the Settlement.

### 4. The Risk of Establishing Liability and Damages

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a significant recovery, against the risk of trial. *See Grinnell*, 495 F.2d at 463. Securities class actions present hurdles to proving liability that are difficult for plaintiffs to meet. *See AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *39 (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *Alloy*, 2004 U.S. Dist. LEXIS 24129, at *5-*6 (finding that issues present in securities action presented significant hurdles to proving liability).

While Plaintiffs believe that their claims would be borne out by the evidence presented at trial, they also recognize that they faced hurdles to proving liability. Defendants have articulated defenses to Plaintiffs' allegations that may have been accepted by the jury. Among other things, Defendants claim that Plaintiffs would be unable to prove either that Intercept or the Individual Defendants made any false statements with scienter. Defendants maintain that they accurately disclosed all material information about OCA and the FLINT trial, and that investors were aware of the fact that OCA could cause lipid abnormalities. Defendants also assert that they lacked scienter because their statements were approved by the NIDDK and the Individual Defendants had no motive to mislead investors. If Plaintiffs could not prove falsity or scienter, the entire case would be lost.

In addition, although Plaintiffs were confident that they would have been able to support their claims with qualified and persuasive expert testimony, jury reactions to competing experts are inherently difficult to predict, and Defendants would have presented highly experienced experts to support their various defenses to liability.

- 9 -

Plaintiffs also faced risks in establishing loss causation and damages at trial. Defendants have argued that the methodology Plaintiffs' expert used at class certification (the same methodology that would be used to prove damages at trial) was inherently unreliable, and, therefore, damages, if any, are significantly less than Plaintiffs had estimated. As with contested liability issues, issues relating to loss causation and damages would have likely come down to an inherently unpredictable and hotly disputed "battle of the experts." Accordingly, in the absence of a settlement, there was a very real risk that the Class would have recovered an amount significantly less than the total Settlement Amount – or even nothing at all. Thus, the $55 million recovery now, particularly when viewed in the context of the risks and the uncertainties of trial, weighs in favor of preliminary approval of the Settlement.

### 5. The Risks of Maintaining the Class Action Through Trial

Here, while briefing and argument on class certification was complete at the time of settlement, the class had not been certified. This was another risk faced by Plaintiffs and the proposed class. Even assuming the class was certified, certification can be revisited at any time and, thus, there is always a risk that this Litigation, or particular claims, might not be maintained as a class action through trial. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might be not certified is not illusory"). Thus, this factor weighs in favor of preliminary approval of the Settlement.

### 6. The Ability of Defendants to Withstand a Greater Judgment

A court may also consider a defendant's ability to withstand a judgment greater than that secured by settlement, although it is not generally one of the determining factors. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) (affirming district court's finding that

defendant's ability to pay more was irrelevant to assessment of settlement). Intercept is a development phase pharmaceutical company with limited resources. While courts generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement, Intercept's financial position supports preliminary approval of the Settlement. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001).

### 7. The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Global Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090, at *12-*13 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in full amount of damages claimed).

In addition, in considering the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. *See AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *44 (where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery"). Nevertheless, the Settlement here represents a very

good result under the circumstances considering a possible recovery at trial was zero. The Settlement Amount reflects a recovery of approximately 35% of the total possible damages. Given both the risks at trial and the recognition that not all damaged Class Members will seek recovery, the size of the recovery strongly supports preliminary approval. Indeed, a recent report published by NERA Economic Consulting finds that in cases like this one, the median settlement recovers only 2.6% of the estimated damages. Svetlana Starykh & Stefan Boettrich, *Recent Trends in Securities Class Action: 2015 Full-Year Review*, at 33, Figure 29 (NERA Jan. 25, 2016). The recovery here is more than 13 times greater than the average and, thus, this factor weighs in favor of the Court granting preliminary approval.

## IV.  THE PROPOSED FORM AND METHOD OF CLASS NOTICE AND THE FORM OF THE PROOF OF CLAIM ARE APPROPRIATE

### A.  The Scope of the Notice Program Is Adequate

There are no "rigid rules" that apply when determining the adequacy of notice for a class action settlement. Rather, when measuring the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules, the court should look to its reasonableness. *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450, at *26 (S.D.N.Y. Feb. 1, 2007). It is clearly established that "[n]otice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *Id*. at *27. In fact, notice programs such as the one proposed by Lead Counsel have been approved as adequate under the Due Process Clause and Rule 23 in a multitude of class action settlements. *See, e.g.*, *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS), 2007 U.S. Dist. LEXIS 29062, at *41-*42 (E.D.N.Y. Apr. 19, 2007) (approving proposed notice program where notice mailed to shareholders of record listed on transfer records and

to "more than 2500 of the largest banks, brokerages, and other nominees"); *In re Luxottica Grp. S.p.A., Sec. Litig.*, No. CV 01-3285 (JBW)(MDG), 2005 U.S. Dist. LEXIS 27765, at *5 (E.D.N.Y. Nov. 15, 2005) (approving notice program, consisting of broker mailing and summary notice publication in *The Wall Street Journal* and *The New York Times*); *In re Prudential Sec. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996) (approving proposed notice and noting mailing of notice to each identifiable class member's last known address is "a procedure that has been given wide-spread approval in other class actions"), *aff'd sub nom. Toland v. Prudential Sec. P'ship Litig.*, 107 F.3d 3 (2d Cir. 1996).

Here, the parties propose disseminating notice by mail and through publication. By virtue of the completion of the process for disseminating the Notice and consulting with counsel for Intercept and its stock transfer agent, Lead Counsel is ensuring that every known avenue for obtaining the identity of Class Members is being utilized to disseminate the Notice by mail. Therefore, it is reasonable to conclude that the Notice will reach the vast majority of the Class Members, is adequate, and should be approved by the Court.

**B.    The Proposed Form of Notice Comports with the Requirements of Due Process, the PSLRA, and Rule 23 and Is the Same or Similar to the Form(s) of Notice Routinely Approved by Courts in This Jurisdiction**

As outlined in the proposed Notice Order (Exhibit A to the Stipulation), the Claims Administrator will notify Class Members of the Settlement by mailing the Notice and Proof of Claim to all Class Members who can be identified with reasonable effort. The Notice will advise Class Members of the essential terms of this Settlement, the Plan of Allocation, and information regarding Lead Counsel's motion for attorneys' fees and expenses. The Notice also will provide specifics on the date, time, and place of the Settlement Hearing and set forth the procedures for objecting to the Settlement, the proposed Plan of Allocation, or the motion for attorneys' fees and expenses.

- 13 -

In addition to mailing the Notice and Proof of Claim, the Claims Administrator will provide for the publication of a Summary Notice in *The Wall Street Journal* and once over a national newswire service. The Notice and related Settlement papers will also be posted on a dedicated website, www.interceptsecuritieslitigation.com.

Similar to other notice programs, the form and manner of providing notice to the Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. §78u-4(a)(7). The content of a notice is generally found to be reasonable if "the average class member understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99 Civ. 0962 (RCC), 2006 U.S. Dist. LEXIS 87825, at *22 (S.D.N.Y. Dec. 4, 2006); *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) (the notice must "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings'").

Specifically with respect to cases filed under the PSLRA, notices of settlements must state: (i) the amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis; (ii) if the parties do not agree on the average amount of damages per share that would be recoverable in the event plaintiff prevailed, a statement from each party concerning the issue(s) on which the parties disagree; (iii) a statement indicating which parties or counsel intend to make an application for an award of attorneys' fees and costs (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought; (iv) the name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions concerning any matter contained in the notice of settlement published or otherwise disseminated to

the class; (v) a brief statement explaining the reasons why the parties are proposing the settlement; and (vi) such other information as may be required by the court. *See* 15 U.S.C. §78u-4(a)(7)(A)-(F).

The proposed Notice contains all of the information required by the PSLRA. *See* Notice, Exhibit A-1. The information is also provided in a format that is accessible to the reader. In addition, the Notice advises recipients that they have the right to object to any aspect of the Settlement, the Plan of Allocation, or the fee and expense application. Furthermore, the Notice provides recipients with the contact information for the Claims Administrator, Gilardi & Co. LLC, and Lead Counsel. Finally, the proposed format is the same or similar to formats that have been approved by many other courts in this jurisdiction. Therefore, Lead Counsel respectfully submits that the Court should approve the form of notice.

## V. CERTIFICATION OF THE CLASS IS APPROPRIATE

Under the terms of the Stipulation, the Settling Parties have agreed, for the purposes of the Settlement only, to the certification of the Class. The Class is defined as:

> All persons and entities who purchased or otherwise acquired the common stock of Intercept Pharmaceuticals, Inc. during January 9, 2014 and January 10, 2014, inclusive, and were damaged thereby. Excluded from the Class are Defendants, present or former executive officers of Intercept, and their immediate families. Also excluded are those persons who validly exclude themselves from the Class pursuant to the Notice of Pendency of Class Action and Proposed Settlement.

For all of the reasons set forth in the Memorandum of Law in Support of Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel (Dkt. No. 64) and the accompanying declarations of Steven P. Feinstein (Dkt. No. 66) and Trig R. Smith (Dkt. No. 65), the requirements of Federal Rules of Civil Procedure 23(a) and (b)(3) have been satisfied and, for settlement purposes only, the Class should be approved, Plaintiffs should be appointed class representatives, and Lead Counsel should be appointed class counsel.

- 15 -

## VI. PROPOSED SCHEDULE

If the Court grants preliminary approval of the proposed Settlement, the parties respectfully submit the following procedural schedule for the Court's review:

| Event | Time for Compliance |
|---|---|
| Deadline for commencing the mailing of the Notice and Proof of Claim to Class Members (the "Notice Date") | 10 business days after entry of the Notice Order |
| Deadline for publishing the Summary Notice in *The Wall Street Journal* and over a national newswire service | 14 calendar days after the Notice Date |
| Filing of memoranda in support of approval of the Settlement and Plan of Allocation, and in support of Lead Counsel's application for an award of attorneys' fees and expenses | 50 calendar days after the Notice Date |
| Deadline for submitting objections or exclusion requests | 65 calendar days after the Notice Date |
| Filing of reply memoranda in further support of the Settlement and Plan of Allocation, and in support of Lead Counsel's application for an award of attorneys' fees and expenses | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing | Approximately 100 calendar days after entry of the Notice Order, at the Court's convenience |
| Deadline for submitting Proofs of Claim | 120 calendar days after the Notice Date |

## VII.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court enter the Notice Order in connection with the settlement proceedings, which will provide: (i) preliminary approval of the Settlement; (ii) approval of the form and manner of giving notice of the Settlement to the Class; and (iii) a hearing date and time to consider final approval of the Settlement and related matters.

DATED:  May 5, 2016                    Respectfully submitted,

                                              ROBBINS GELLER RUDMAN
                                                 & DOWD LLP
                                              TOR GRONBORG
                                              TRIG R. SMITH
                                              TED PINTAR
                                              KEVIN A. LAVELLE
                                              KEVIN S. SCIARANI
                                              CARISSA J. DOLAN

                                                      s/ Tor Gronborg
                                                     TOR GRONBORG

                                              655 West Broadway, Suite 1900
                                              San Diego, CA  92101-8498
                                              Telephone:  619/231-1058
                                              619/231-7423 (fax)
                                              torg@rgrdlaw.com
                                              trigs@rgrdlaw.com
                                              klavelle@rgrdlaw.com
                                              ksciarani@rgrdlaw.com
                                              cdolan@rgrdlaw.com

                                              ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                              SAMUEL H. RUDMAN
                                              DAVID A. ROSENFELD
                                              58 South Service Road, Suite 200
                                              Melville, NY  11747
                                              Telephone:  631/367-7100
                                              631/367-1173 (fax)
                                              srudman@rgrdlaw.com
                                              drosenfeld@rgrdlaw.com

                                              Lead Counsel for Plaintiffs

POMERANTZ LLP
JEREMY A. LIEBERMAN
LESLEY F. PORTNOY
600 Third Avenue
New York, NY 10016
Telephone: 212/661-1100
212/661-8665 (fax)

Additional Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I, Tor Gronborg, hereby certify that on May 5, 2016, I caused a true and correct copy of the

attached:

> Plaintiffs' Memorandum of Law in Support of Unopposed Motion for Preliminary
> Approval of Settlement

to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send

notification of such public filings to all counsel registered to receive such notice.

*s/ Tor Gronborg*
TOR GRONBORG